[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a complaint for legal separation and a cross-complaint for dissolution of marriage, and other relief brought to the judicial district of Waterbury. Many of the facts that give rise to this action are not in dispute. The plaintiff and the defendant whose maiden name is Marzia Borrelli were married on October 17, 1986 in Naugatuck, Connecticut. The plaintiff has resided continuously in the state of Connecticut for at least one year immediately prior to the date the complaint was filed. The marriage between the parties has broken down irretrievably without any reasonable prospect of reconciliation. There are no minor children issue of this marriage and the defendant does not presently have any minor children that were born after the date of marriage to the plaintiff. Neither party has received state assistance.
The parties are in dispute as to the cause of the breakdown of the marriage. From the evidence presented the court finds that the plaintiff's conduct is the primary cause of the breakdown of the marriage.
The plaintiff was born on July 24, 1949. The plaintiff is employed as a truck driver for Stop Shop Companies. His gross weekly income is $860.20. He has weekly expenses totaling $307.55. He has a joint Visa liability with the defendant with a balance due of approximately $3,950. In July of 1998 the plaintiff charged $4,000 to the Visa account to be used for legal fees after he vacated the family home.
The plaintiff owns a 1988 Citation Outboard with trailer with a value CT Page 10007 of $3,000 and a 1967 16' fishing boat with trailer with a value of $400. He has two accounts at Webster Bank, one a savings with a balance of $300 and the other a checking with a balance of $2,400. The parties have a joint checking account at First Union with a balance of approximately $20. He has life insurance in the face amount of $60,000 with a cash surrender value of $2,482.35. He also has a pension plan through New England Teamsters. His estimated pension plan value as of May 4, 2000, will pay $1,325 monthly to him at age 64. The value of his pension plan as of May 4, 2000, is $68,219.09. The value of his pension plan after reduction for marital coverture is $58,225. All values are based on a valuation date of May 4, 2000, and a date that benefits stopped accruing of July 1, 1999, and an assumed date that the marriage ended of September 15, 1998, and an age when benefits will commence of age 64. The plaintiff's employment with the New England Teamsters and Trucking Industry commenced July 15, 1985. The estimated $1,325 monthly benefit is based on his normal retirement age of 64 with payments made as a single life annuity.
The defendant was born on January 16, 1951. She has a tenth grade education. She has been employed at Winchester Electronics for approximately five (5) years. For the previous seventeen (17) years she worked as a seamstress.
Due to a work related injury in approximately October of 2000, the defendant had surgery on her right hand for which she received workers' compensation benefits. She has no remaining disability from that surgery. She also had surgery on her left hand that was not work related.
The defendant is employed at Winchester Electronics with a gross weekly income of $365. She also has an average gross weekly income from her rental property in Queens, New York of $115. She has claimed weekly expenses of $589. The $110 weekly that she shows on her financial affidavit for auto loan in fact is paid as a rental expense from the Queens, New York property and therefore she does not have that weekly expense. Further, although she shows a $47 weekly expense for automobile insurance, no credible evidence has been presented to substantiate that expense. In addition to the liability on the joint Visa card she also has a liability to Sears for a carpet with a balance of $900. She has an account at First Union with a balance of $1,000 and an account Premier America Credit Union with a balance of $1,500. She has a 401k retirement plan with a value of $14,000. The parties are in dispute as to the percentage of ownership that the defendant has in property located in Astoria, Queens, New York and as to the value of that property. The court finds that she owns a one-half interest in the rental property with her sister located at 32-59 43rd Street, Astoria, Queens, New York. The total CT Page 10008 fair market value of that property is $250,000 and her one-half (1/2) interest is $125,000.
Title to a 1996 Oldsmobile Bravada is in both parties names. That vehicle has a total value of $10,500 and a loan balance of $2,000. The Bravada originally cost a total of approximately $24,000. The parties took out a loan of approximately $21,000 and made a down payment of $3,000 from a joint bank account.
This is the defendant's second marriage. She obtained a dissolution of marriage from her now deceased first husband on July 27, 1982. As part of the decision in that case, her now deceased ex-husband was ordered to convey to her his interest in property owned at 23 Tudor Street, Waterbury, Connecticut. That property was conveyed to her by her now deceased ex-husband on April 2, 1982. The defendant in turn conveyed to herself and her present husband the title to the Tudor Street property in survivorship on October 29, 1986. The Tudor Street property was sold on or about September 21, 1994 with the plaintiff and the defendant receiving a net check in the amount of $65,000. The total sale price was approximately $75,000 and there was a mortgage balance of some $7,000 — $8,000 at the time of the sale on September 21, 1994. Extensive renovations were done to the Tudor Street property by the defendant between October 1986 and the date the property was sold. His brothers as well as the defendant's son from her first marriage also assisted in the renovations. Repairs on the Tudor Street home took approximately 1 ½ to 2 years to be completed. The repairs included the gutting of all the rooms, the tearing out of plaster down to the studs, the replacement of wiring in the complete house, the replacement of the plaster walls with sheetrock and insulation throughout the house, the replacement of windows and the replacement of the roof, as well as the addition of an additional half bath. Further, the exterior had new vinyl siding put on. The cost of the materials for the renovations for between $18,000 — $20,000. The value of the Tudor Street home in 1986 was approximately $25,000. The renovations to the property increased its value by approximately $50,000.
The parties own a family home located 40 Lake Road, Watertown, Connecticut. The court finds that the fair market value of the home is $143,311. It has a mortgage of $52,000 and an equity of $91,311. This property was purchased in 1991 for $122,000. Ten Thousand Dollars of the purchase price was from a gift from the defendant's mother. The plaintiff also did renovations to the present family home including extending the deck and remodeling the family room. In late 1987 or early 1988 the defendant received approximately $6,500 as a beneficiary of a life insurance policy on her ex-husband's life. She also received during the marriage a $10,000 gift from her aunt. The life insurance proceeds and CT Page 10009 the $10,000 gift from her aunt all went into joint savings of the parties. The $10,000 gift from her aunt was used towards the renovation of the present family home. The total down payment on the Lake Road property was $20,000. The plaintiff vacated the family home in August 1999. Between January 13, 2000 and June 19, 2000, he paid a total of approximately $2,400 to the defendant to be used towards mortgage payments and home maintenance.
The parties own a 1990 Toyota Pick-up Truck with a fair market value of $1,000. They also own a 1996 Oldsmobile Bravada with a fair market value of $10,500 and a loan balance of $2,000 and an equity of $8,500. They also own a 1985 Mercury with a value of $400.
In the calendar year 1998 the defendant filed an individual income tax return and had gross wages of $17,757. In the calendar year 1999 the defendant filed an individual income tax return and had gross wages of $16,643.
This court has considered the provisions of § 46b-82 regarding the issue of alimony, and has considered the provisions of § 46b-81 (c) regarding the issue of property orders, and has considered the provision of § 46b-62 regarding the issue of attorney's fees. The court enters the following orders:
 ORDERS
A. By way of Dissolution of Marriage
 1. The marriage between the parties is dissolved and each party is declared to be single and unmarried.
B. By way of Alimony
1. No alimony is ordered in favor of either party.
C. By way of Property Orders
 1. All the defendants interest in the real property located at 32-59 43rd Street, Astoria, Queens, New York is awarded to the defendant.
 2. The 1985 Mercury, 1988 Citation 19 ½ foot Outboard with trailer, and 1967 16 foot fishing boat with trailer are all awarded to the plaintiff.
 3. The plaintiff is to quit-claim to the defendant CT Page 10010 all of his right, title and interest in the 40 Lake Road, Watertown, Connecticut property by August 24, 2001. She is to pay the mortgage and other expenses related to that property and hold the defendant harmless. Simultaneously with the plaintiff quit-claiming to the defendant his interest in the family home, she is to execute a promissory note payable to the plaintiff in the face amount of $24,000 secured by a mortgage on the family home. The note is to provide for payments in the amount of $800 per month to commence September 1, 2001 and on the first day of each month thereafter until the full $24,000 has been paid without interest. In the event the defendant is late in any of the monthly payments by 10 days or more, then the unpaid remaining balance is to have interest at the rate of 8% per annum. The note is also to provide for attorney's fees in the event action is brought on the note or mortgage. The court retains jurisdiction over any dispute that may arise involving the language of either the promissory note or the mortgage deed.
 4. The Toyota pick-up truck shown on the plaintiff's financial affidavit is awarded to the plaintiff.
 5. The bank accounts shown on the plaintiff's financial affidavit are awarded to the plaintiff.
 6. The cash surrender value of the life insurance policy shown on the plaintiff's financial affidavit is awarded to the plaintiff.
 7. The plaintiff's pension plan through New England Teamsters is awarded to the plaintiff.
 8. The plaintiff is to pay the balance due on the joint visa account and hold the defendant harmless therefrom.
 9. The defendant is to pay the Aspire Visa debt, the Sears debt, the JC Penney debt and the Filene's debt all shown on Schedule A to her financial affidavit and hold the plaintiff harmless therefrom.
 10. The 1996 Oldsmobile Bravada is awarded to the defendant. She is to pay the loan balance and hold CT Page 10011 the plaintiff harmless therefrom. The plaintiff is to transfer to the defendant his interest in said vehicle by the August 24, 2001.
 11. The bank accounts shown on the defendant's financial affidavit are awarded to the defendant.
 12. The 401K plan shown on the defendant's financial affidavit is awarded to the defendant.
 13. The parties entered into an agreement dated February 1, 2001, regarding the division of personal property. The court approves of that agreement and enters orders in accordance with that agreement. The plaintiff is to remove all of those items of personal property from the family residence by August 24, 2001.
D. By way of Attorney's fees
 1. No attorney's fees are awarded in favor of either party.
E. Miscellaneous Orders
 1. Counsel for the plaintiff is to prepare the judgment file within thirty (30) days and send it to counsel for the defendant for signature and filing.
AXELROD, J.